# Exhibit F



*Classic Values, Innovative Advice*

***Via Electronic Mail and US Mail***

March 1, 2016

Kevin Meacham, Esq.
Jones Day
500 Grant Street, Suite 4500
Pittsburgh, PA 15219-2500

Re:   <u>*U.S. v. IBT, No. 88 Civ. 4486 (S.D.N.Y.) (LAP) — Cheiron's Subpoena Response*</u>

Dear Mr. Mecham:

We are in receipt of your letter dated February 19 concerning completion of the response to the Chief Investigator's subpoena in the above-reference matter.

Let me say that there appears to be a misunderstanding regarding our furnishing of the remainder of the requested e-mails that we identified as containing confidential information. As we discussed, we had suspended the process following a phone call from Ms. Zahner in response to my e-mail of November 9, 2015 advising her that we needed a protective order to proceed. Ms. Zahner stated they thought they had what was needed and would get back to us if they needed anything else.

During our discussion, you indicated that the Chief Investigator did not want to agree to a protective order because he did not want any restrictions on the use of the documents. I stated that I would need to consult with our business partners and I would restart the process. As I stated at the end of our call, I hoped we would be able to resolve this matter without going to court.

We have advised our business partners of the current state of your request. We have responses from Optum and Express Scripts. Optum wants a global protective order, and Express Scripts is willing to have their confidential information redacted and will decide on a protective order if and when you request unredacted versions of e-mails containing confidential information. We have not heard yet from Caremark, Catamaran (which we understand was acquired by Optum), Torchmark, or SavRx.

Furthermore, as indicated in the aforementioned November 9, 2015 e-mail, Cheiron seeks a protective order for Exhibit 5 to the subpoena, which is a clearly marked confidential, and which the Chief Investigator obtained from another source. For the reasons given in said letter, Cheiron has not waived its right to keep that document confidential. Cheiron was not responsible for the release of Exhibit 5 and therefore the release does not constitute a waiver of the confidential nature of that exhibit.

We understand that you believe you have made extensive accommodations to avoid causing us excessive time and expense complying with the subpoena. Nevertheless, staff and consultants have already spent over 400 hours responding to the subpoena, and Cheiron took the

Kevin Meacham, Esq.
March 1, 2016
Page 2

extraordinary step of allowing the Chief Investigator to view all e-mails requested. Your request that we redact any confidential information in the remaining e-mails will require our consultants to take additional time away from their work at great cost and inconvenience. Our consultants cannot delegate the task of reviewing documents requested by the Chief Investigator's Office.

The document review can only be performed by those who are familiar with the business operations of our clients and business partners. Therefore, the diversion of the consultant's time to discovery requests is very costly to Cheiron. Moreover, after redaction many of these e-mails will not be useful. Such a process will cause the Chief Investigator to request unredacted versions at a later date, a right which Ms. Zahner clearly reserved in her letter dated October 15, 2015.

Your proposed methodology of resolving the document production seems unduly wasteful, expensive, and time consuming. At the point where your client would request unredacted versions, Cheiron would need a protective order. Accordingly, we do not understand the Chief Investigator's reluctance to enter into a protective order. It will allow us to turn over all the requested e-mails intact so they can better evaluate them and save us additional time and expense.

Please rest assured that Cheiron has no desire to adversely affect your ability to pursue any matter that the Chief Investigator believes is warranted and is willing to work with you on the wording of a protective order. Our only objective is to prevent the confidential information contained in these e-mails from becoming public. As we explained to Ms. Zahner, our business depends on our ability to get responsive bids from business partners, which in turn, depends on their being able to trust that the pricing and discount information they supply us will not be disclosed to other prospective customers or their competitors.

In response to the additional requests in your letter, which are quoted below, please note the following:

"**Item 3** of the subpoena required the production of all documents regarding the IBT VEBA Trust request for bids for a PBM for the period from September 1, 2012 to the present. The Chief Investigator's Office requires the following documents responsive to Item 3:"

1. "All rules, guidelines, and agreements governing the IBT VEBA Trust request for bids process in 2013, including, but not limited to, all guidelines regarding confidentiality."

<u>Cheiron Response</u>: We previously provided Chief Counsel the Request for Proposals, dated April 8, 2013, which was issued in this matter and which sets forth the guidelines for confidentiality. Attached is the Confidentiality Agreement form that is referenced in the RFP. We also attach a copy of our nondisclosure agreements with Caremark, Optum, Catamaran, and Express Scripts. We know of no other documents that contain the requested information.

"**Item 4** of the subpoena required the production of all communications between September 1, 2012 and the present between Cheiron and all IBT employees. Chief Investigator's Office requires the following documents responsive to Item 4:"



1. For the period from September 1, 2012 to the present, all communications regarding or reflecting any money, gift or anything of value given to, offered to and requested by any and all IBT employees and representatives of the IBT VEBA Trust.

**Cheiron Response:** We have no communications regarding or reflecting any money, gift or anything of value given to, offered to and requested by any and all IBT employees and representatives of the IBT VEBA Trust. We have contributed to the Jimmy Hoffa scholarship fund; however, and enclose the e-mails related to this contribution. Cheiron deems these charitable contributions very appropriate. Cheiron has contributed to other charities that are particular favorites of its clients. Cheiron views these contributions as not only worthwhile, but also as demonstrating Cheiron's support for worthwhile charitable activities of its clients.

2. For the period from May 1, 2014 through June 30, 2014, all communications regarding the failure of Optum to implement changes agreed to in the IBT VEBA Trust request for bids process.

**Cheiron Response:** We are in the process of identifying and retrieving relevant communications.

3. For the period from September 1, 2015 to the present, all communications regarding the Independent Review Board's inquiries.

**Cheiron Response:** We regard this request as beyond the scope of the subpoena, and consider our internal communications on this matter as privileged.

"**Item 5** of the subpoena required the production of all communications from September 1, 2012 to the present among Cheiron employees. The Chief Investigator's Office requires the following documents responsive to Item 5:"

1. "For the period from September 1, 2012 to the present, all communications regarding or reflecting any money, gift or anything of value given to, offered to and requested by any and all IBT employees and representatives of the IBT VEBA Trust."

**Cheiron Response:** We have no communications regarding or reflecting any money, gift or anything of value given to, offered to and requested by any and all IBT employees and representatives of the IBT VEBA Trust. There is, however, an e-mail approving a contribution to the Jimmy Hoffa Scholarship Fund.

2. "For the period from May 1, 2014 through June 30, 2014, all communications regarding the failure of Optum to implement changes agreed to in the IBT VEBA Trust request for bids process."

**Cheiron Response:** We are in the process of determining whether there are any relevant communications.



Kevin Meacham, Esq.
March 1, 2016
Page 4

> 3. For the period from September 1, 2015 to the present, all communications regarding the Independent Review Board's inquiries.

**Cheiron Response:** We regard this request as beyond the scope of the subpoena, and consider our internal communications on this matter as privileged.

> "**Items 7 and 8** of the subpoena required the production of: among other documents, all communications with Charles Bertucio, Vicki Lanini, and The GrandFund. By the letter dated October 14, 2015, Cheiron indicated that it anticipated the response to item number 8 would be that no responsive documents exist. Please provide a written response to items 7 and 8 regarding those individuals and entity."

**Cheiron Response:** There are no Cheiron communications with Charles Bertucio, Vicki Lanini, and The GrandFund.

Please call Dwight Murray at (703) 980-4169 with any questions or concerns and to work out an agreement to finish the document production. Thank you.

Sincerely,
Cheiron

X _Gerald E. Cole by gmc_

Gerald E Cole
Chief Research Counsel

Attachments

