**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

Plaintiff,

-against-

INTERNATIONAL BROTHERHOOD OF TEAMSTERS, et al.,

Defendants.

FINAL AGREEMENT AND ORDER
88 Civ. 4486 (LAP)

WHEREAS, on June 28, 1988, the United States of America (the "Government") commenced this action seeking relief against the International Brotherhood of Teamsters (the "IBT" or "Union") and others pursuant to the civil remedies provisions of the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1964;

WHEREAS, on March 14, 1989, this Court approved a consent order that resolved the Government's claims against the IBT defendants (the "Consent Decree");

WHEREAS, the Government and the IBT (the "Parties") entered into the Consent Decree with the objectives of ridding the IBT of any criminal element or organized crime and corruption and establishing a culture of democracy to maintain the Union for the sole benefit of its members;

WHEREAS, to achieve those objectives, the Consent Decree enjoined certain activity and instituted institutional reforms of the IBT's disciplinary and electoral processes;

WHEREAS, on February 17, 2015, the Court approved a Final Agreement and Order of Stipulation of Dismissal ("2015 Final Order"), which made significant changes to the Consent Decree and established a new independent disciplinary mechanism for the IBT;

WHEREAS, the Parties agree that implementation of the disciplinary and electoral provisions of the Consent Decree and the 2015 Final Order has resulted in significant and positive change in the culture and processes of the IBT, and that there has been substantial progress towards achieving the objectives of the Consent Decree and the 2015 Final Order;

WHEREAS, the Parties agree that there has been significant success in eliminating corruption from within the IBT and in conducting free, open and democratic elections for its International Officers and Convention Delegates;

WHEREAS, after over 35 years of an independent disciplinary mechanism within the IBT, the Parties recognize that there is no longer sufficient justification for a Court-ordered independent disciplinary mechanism within the Union;

WHEREAS, the Parties acknowledge that continued vigilance is necessary to ensure that the objectives of the Consent Decree and the 2015 Final Order are achieved;

WHEREAS, in addition to those objectives, the objectives of this Revised Final Order are to eliminate the Government's role in the affairs of the IBT, except as otherwise expressly provided in this Revised Final Order, while, at the same time, preserving the gains achieved by the Consent Decree and the 2015 Final Order; to continue to foster and promote democracy in the IBT through independent supervision of IBT elections; and to continue the fight against criminal elements, organized crime, and corruption and prevent their re-emergence;

WHEREAS, the Parties agree that these objectives can best be achieved by implementation of this Revised Final Order; and

WHEREAS, it is imperative that the IBT be maintained democratically, with integrity, for the sole benefit of its members, and without unlawful outside influence;

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, by and between the Government and the IBT, as follows:

**PERMANENT INJUNCTIONS**

All permanent injunctions entered in this action shall survive the dismissal of this action and shall continue to be fully viable and effective.

1. All current and future members, officers, agents, representatives, employees, and persons holding positions of trust in the IBT and any of its constituent entities are permanently enjoined from:

   a. committing any act of racketeering activity, as defined in 18 U.S.C. § 1961;

   b. knowingly associating with any member or associate of any Organized Crime Family of La Cosa Nostra or any other criminal group;

   c. knowingly associating with any person enjoined from participating in union affairs;

   d. obstructing, or otherwise interfering, directly or indirectly, with the work of any person appointed to effectuate the terms of this Revised Final Order; and

   e. knowingly permitting any member or associate of any criminal group, or any person otherwise enjoined from participating in union affairs, to exercise any control or influence, directly or indirectly, in any way or degree, in the affairs of the IBT or any of its constituent entities.

As used in this Revised Final Order, the term "constituent entities" shall include all existing and future Joint Councils, Local Unions, and other IBT entities subordinate to the IBT General Executive Board. The defined terms "IBT" and "Union" include these "constituent entities" when used herein.

2. For purposes of this Revised Final Order (and for purposes of any disciplinary action taken by the IBT pursuant to the IBT Constitution), the phrase "knowingly associate" shall have the same meaning under this Revised Final Order as under the Consent Decree and the Final Order, as construed by the United States Court of Appeals for the Second Circuit and this Court.

3. For purposes of this Revised Final Order (and for purposes of any disciplinary action taken by the IBT pursuant to the IBT Constitution), the phrase "otherwise enjoined from participating in union affairs" shall have the same meaning under this Revised Final Order as under the Consent Decree and the Final Order, as construed by the United States Court of Appeals for the Second Circuit and this Court, and shall include any person who was permanently barred, who was permanently expelled, who permanently resigned, or who was otherwise permanently removed from membership in the IBT pursuant to, following, or in response to disciplinary charges instituted or recommended under the procedures enacted under the Consent Decree or under the Final Order and this Revised Final Order and shall include, among others and in particular, all persons identified on the list attached to this Revised Final Order as Exhibit A.

4. All persons who were enjoined from participating in union affairs under the Consent Decree and the Final Order including all persons identified on Exhibit A to this Revised Final Order, and all persons who were permanently enjoined from participating in union affairs under the mechanisms established by the Final Order, are permanently enjoined from knowingly associating with any member or employee of the IBT or any of its constituent entities.

**JURISDICTION AND ENFORCEMENT**

5. This Court shall retain exclusive jurisdiction to enter any lawful and appropriate order to deter, discover, determine, sanction, and remedy any violation of this Revised Final Order. The Government shall have the authority to apply to this Court, upon notice to the IBT, for such process and such equitable orders and sanctions as are lawful and appropriate to deter, discover, determine, sanction, or remedy any violation of this Revised Final Order. This Revised Final Order shall bind all current and future members, officers, agents, representatives, and employees of the IBT and its constituent entities to the same extent and to the same degree as the Consent Decree and Final Order bound such entities and individuals.

**ALL WRITS INJUNCTION**

6. Pursuant to 28 U.S.C. § 1651, the IBT and its constituent entities, and all members, officers, representatives, agents and employees of the IBT or any such IBT constituent entity, are permanently enjoined from filing or taking any legal action that implicates the Consent Decree, the Final Order, or this Revised Final Order in any court or forum in any jurisdiction other than this Court.

**INTERNATIONAL ELECTIONS**

7. The Parties agree that the IBT will permanently retain the structural electoral reforms of the Consent Decree relating to the International Union Delegate and Officer Election, including without limitation, the one-Teamster, one-vote direct elections of IBT International Officers that were adopted by the IBT at the 2001 IBT Convention. Accordingly, the structural electoral reforms established by the Consent Decree, as set forth in Paragraph 12(D)(i)-(ix) of the Consent Decree, as amended, shall remain permanently in full force and effect.

8. The 5% nomination threshold for International Officers and Trustees, which was adopted at the 2001 Convention, shall be maintained for the International Officer elections through the 2026 Convention and shall neither exceed 8% nor decrease below 5% in future years. Any changes to the 5% threshold shall be approved by the Independent Election Supervisor.

9. The Parties agree that every IBT International election occurring after the effective date of this Revised Final Order shall be supervised by an Independent Election Supervisor appointed by the IBT in accordance with Article III, Section 5(a)(2), of the 2021 IBT Constitution, and in accordance with this Revised Final Order. The Independent Election Supervisor shall be empowered to employ such staff and other assistants as she/he deems appropriate.

10. The IBT shall continue to maintain standards sufficient to ensure that the Independent Election Supervisor appointed to supervise IBT International Officer elections after the effective date of this Revised Final Order shall be experienced, effective, and completely independent of the IBT, and free from any actual or apparent conflict of interest. No individual may be appointed to the office of Independent Election Supervisor absent a reputation for honesty, integrity, impartiality, and independence. Barring exceptional circumstances, no individual may be appointed to the office of Independent Election Supervisor without substantial experience with union elections (desirable qualifications include knowledge of and experience with the mechanisms and procedures used in large scale elections, Title IV of the Labor Management Reporting and Disclosure Act and the IBT data systems) or law enforcement investigations, and a commitment to transparency in the election process. To the extent the Independent Election Supervisor lacks substantial experience with either union elections or law

enforcement investigations, his or her staff shall include a person or persons with such experience. No individual serving as the Independent Election Supervisor or any member of his or her staff may be a candidate for any delegate position or International office. No individual serving as the Independent Election Supervisor or any member of his or her staff may be affiliated with any candidate for any delegate position or International office. No individual serving as the Independent Election Supervisor or any member of his or her staff may be a member of the IBT, a present or former paid or non-paid appointee of any IBT entity, or an individual who has been an employee, representative, or agent of any IBT entity within the previous ten-year period, except as provided in paragraph 11.

11. Neither the IBT nor any of its constituent entities may employ or retain any individual who has served as an Independent Election Supervisor for a period lasting at least five years after certification of the election in which the individual served as the Independent Election Supervisor. This provision shall not, however, preclude the appointment of an individual who has served as the Independent Election Supervisor to supervise subsequent Local Union or International Union elections.

12. The Parties agree that every IBT International Officer election occurring after the effective date of this Revised Final Order shall be conducted pursuant to rules and procedures designed to ensure a fair, free, and democratic election (the "Election Rules"). These rules and procedures shall permanently ensure that each election will be conducted by secret ballot and that every member shall have the right to vote for or otherwise support the candidate or candidates of his choice, without being subject to penalty, discipline or improper interference or reprisal of any kind by the Union or any member thereof. Notwithstanding any provision in this Revised Final Order regarding the adoption and modification of the Election Rules, the IBT shall

not adopt or modify any Election Rules that have the purpose or effect of interfering with a member's right to vote by secret ballot for the candidate or candidates of his choice, without being subject to penalty, discipline or improper interference or reprisal of any kind by the Union or any member thereof.

13. The IBT General Executive Board (the "GEB") shall have the authority to adopt Election Rules to govern the election of Local Union delegates to any International Union Convention at which candidates for International Union office are nominated, and for the election of International Union officers. The Election Rules shall provide for the appointment by the GEB of an Independent Election Supervisor, who shall conduct and supervise such elections of delegates to the International Convention, the nomination of candidates for International office at the Convention, and the election of International officers.

14. Authority to interpret and enforce the Election Rules shall rest at all times exclusively with the Independent Election Supervisor duly appointed pursuant to the IBT Constitution and this Revised Final Order, who shall endeavor at all times to consult with all interested parties, including the IBT, before interpreting or enforcing the Rules. In addition, the Election Supervisor shall also have authority to recommend Election Rules to the GEB for consideration.

15. For the International Officer elections, the Election Rules shall provide for a mailing funded by the Union in a single package of campaign materials from all nominated candidates to the current names and addresses that are on file for members in good standing. The mailing will occur in lieu of one issue of the IBT Magazine not less than one week prior to the date scheduled by the Election Office for the mailing of ballots. The mailing shall afford each nominated candidate a reasonable opportunity, equal to that of any other candidate for the same

office, to communicate his or her views to the membership. In addition, the Election Rules shall provide reasonable measures for the IBT's accommodation of reasonable requests from candidates to communicate electronically with the membership.

16. The GEB shall promulgate Election Rules for succeeding election cycles which are substantially the same as those which governed the previous IBT elections but may make non-material changes as necessary to tailor the rules to a new election cycle. In promulgating Election Rules, the GEB may also make material modifications to the provisions of the Election Rules used for preceding elections, provided that the changes are fully consistent with federal law, the IBT Constitution, and this Revised Final Order, and provided that they are approved by the Independent Election Supervisor (and for the year 2026, provided that the Government is notified in writing of the changes prior to implementation). Prior to submitting any proposed material modification to the Independent Election Supervisor, the GEB shall notify the IBT membership of the proposed change by posting the proposed modification on the homepage of the IBT's website, and provide IBT members with thirty (30) days to submit comments on the proposed modification. The Independent Election Supervisor may reject the modifications only if he or she determines, after consulting with all interested parties including the IBT, that the changes will prevent the election system from functioning effectively and with adequate independence; or that the amendment(s) will deprive members of their reasonable opportunity to nominate candidates, hold office, vote for and otherwise support candidates of their choice. Nothing in this Revised Final Order is intended to preclude the GEB from seeking to modify the Election Rules in a manner consistent with the Labor Management Reporting and Disclosure Act and its interpretation in *Finnegan v. Leu*, 456 U.S. 431 (1982), and its progeny, provided that the

modification is made pursuant to the procedures otherwise set forth in this paragraph and the Revised Final Order.

17. Following certification of the results of each IBT election conducted after the effective date of this Revised Final Order, the IBT shall solicit and make available to the membership a report by the Independent Election Supervisor, which shall report in detail on the results of the election (including the statistics reflecting voter turnout and the number of contested delegate elections), assess the successes and shortcomings of the election process, determine any positive and negative trends in comparison to prior election cycles, and recommend changes to the election rules to address any negative trends and enhance the democratic process. The Independent Election Supervisor shall have the right to communicate with the membership concerning the IBT international election, including, for example, posting the election rules, any decisions on disputed matters, election results and logistical information.

18. The presumptive right of access to employer property as set forth in the 2025 Election Rules shall be fully enforceable by the Parties as against third parties to the extent permissible under the All Writs Act.

**TRANSITION TO IBT INTERNAL DISCIPLINARY SYSTEM**

19. The IBT shall permanently maintain rigorous internal investigative, disciplinary, and audit systems to effectively identify, address, and eliminate the influence of organized crime and all forms of major corruption within the Union, including but not limited to labor racketeering, corrupt relationships with employers or third-parties, theft or embezzlement, and other criminal activity. The IBT shall maintain the Office of Compliance Standards and Investigations ("OCSI") and its internal and affiliate audit departments as permanent components of its compliance

infrastructure and with adequate resources and staffing in order to meet the objectives of the Consent Decree and this Revised Final Order.

20. The term of the Independent Investigations Officer ("IIO") shall end on December 31, 2026, at which time the authority of the IIO shall terminate. The IIO and his staff shall make best efforts to complete the majority of the IIO's pending investigations, and issue written investigative reports detailing proposed charges and recommendations when appropriate, by December 31, 2026. The IIO shall continue to have the authority and powers provided in the Final Order with respect to his pending investigations.

21. After the effective date of this Revised Final Order, the IIO may refer a pending investigation to the Independent Review Officer ("IRO") for a determination as to whether the matter should be transferred to the OCSI or referred to an appropriate law enforcement agency including, but not limited to, the Department of Labor, to ensure that the matters are brought to an appropriate resolution. The IRO shall ensure that the confidentiality of witnesses, including confidential source information, is protected in connection with any such transfer or referral. In the event the IIO is unable to complete an investigation by December 31, 2026, the IIO shall refer that investigation to the IRO for a similar determination.

22. All new complaints received by the IIO on or after the effective date of this Revised Final Order shall be referred to the OCSI for intake, investigation, and disposition in accordance with the OCSI's governing policies and procedures as well as the IBT Constitution, provided, however, that in order to preserve the confidentiality of any person or information, or for any other reason the IIO deems appropriate, the IIO may make further inquiries of the complainant; may refer the matter to the IRO instead of the OCSI; or may take any other action (not to include the commencement of a new investigation) the IIO determines to be appropriate.

23. The IIO shall transfer all of its closed and inactive case files to the custody of the Independent Review Officer who shall maintain custody of these files until the completion of his or her term.

**INDEPENDENT REVIEW OFFICER**

24. There shall continue to be an IRO, whose term shall expire three (3) years from the effective date of this Revised Final Order, subject to the provisions set forth herein. The IBT shall continue to maintain minimum qualifications for service as the IRO, which qualifications shall be designed to ensure that the IRO is experienced, effective, and completely independent of the IBT, and free from any actual or apparent conflict of interest. No individual may serve as the IRO absent a reputation for honesty, integrity, impartiality, and independence, and unless he or she is an attorney with substantial prior experience with enforcing labor laws or with governmental investigations, or has substantial prior experience as a federal or state judge. Current and former members and employees and agents of the IBT and its constituent entities shall be ineligible for appointment as IRO.

25. The current IRO is the Honorable Barbara S. Jones of the firm Bracewell LLP. The IRO may not be removed absent good cause. The IBT has represented that it has no present intention to replace Judge Jones. In the event the IBT General President appoints another individual to serve as the IRO, the individual must satisfy all of the conditions, criteria, and qualifications for experience and independence set forth in the IBT Constitution and this Revised Final Order.

26. The IRO shall be empowered to employ such staff and other assistants as she or he deems appropriate, including, but not limited to, attorneys and individuals who are experienced in law enforcement investigations. All such staff shall be completely independent of the IBT.

27. The IRO shall have authority to review: (1) IBT disciplinary decisions in matters where either the General President or the General Executive Board has assumed original jurisdiction pursuant to the IBT Constitution; and (2) all disciplinary decisions, if any, stemming from: organized crime, labor racketeering, corrupt relationships with employers or third-parties, election fraud, and theft or embezzlement of over $100,000. If the IRO determines that a Union entity has not pursued the matter in a lawful, responsible or timely manner, or that a decision is inadequate in the circumstances, the appropriate Union entity shall be notified and shall, within twenty (20) days, set forth in writing any additional actions it has taken or will take to correct the defects set forth in the IRO's notice. The Union entity shall, in addition, specify a timetable for such additional actions to be completed.

28. If the IRO concludes that the Union entity has not responded or that the additional actions it has taken or will take are inadequate to remedy the defects previously identified, the IRO shall convene a de novo hearing on the matter, giving adequate prior notice to all affected parties.

29. The hearings described in paragraph 28 shall be conducted under rules and procedures that are consistent with the requirements of the IBT Constitution and applicable law. The charged parties shall have the right to be represented by legal counsel, or by a fellow member of the Union, at their option. The IRO shall issue a written decision with respect to any matter on which a hearing has been conducted before him or her. Hearings conducted before the IRO shall be governed by Exhibit B.

30. Decisions of the IRO are final and binding and shall not be subject to further review under the IBT Constitution or to judicial review by this Court, provided, however, that nothing in this Revised Final Order shall limit the right of any person or entity adversely affected

to seek judicial review of union discipline to the extent such review is available under the Labor-Management Reporting and Disclosure Act of 1959. In any such action, the IRO is authorized, but not required, to file papers in support of the decision of the IRO. The appropriate IBT entity shall take all action necessary to implement the IRO's decision, consistent with the IBT Constitution and applicable federal laws.

31. Any proposed settlement of a charge in matters where either the General President or the General Executive Board has assumed original jurisdiction pursuant to the IBT Constitution, or in any matter involving organized crime, labor racketeering, corrupt relationships with employers or third-party vendors, election fraud, or theft or embezzlement over $100,000, is subject to approval by the IRO.

32. In addition to the review responsibilities set forth above, the IRO shall have authority to interpret this Revised Final Order, subject to review by this Court. The IRO shall also have authority to: (1) consult with and receive information from the Independent Election Supervisor; (2) refer any matter to the IBT's internal disciplinary system; (3) refer any matter to law enforcement; (4) examine and review actions taken by the appropriate IBT entity to implement the IRO's decisions pursuant to this Revised Final Order; and (5) receive reports of trusteeship decisions and, after an aggrieved party has exhausted their internal appeals under the IBT Constitution, have the authority to, in his or her discretion, review, affirm, modify, or reverse any such decisions with such affirmance, modification, or reversal being final and binding.

33. The IRO shall be responsible for preparing and distributing to the membership annual reports of the work of the IRO, which reports shall include detailed descriptions of the disciplinary, trusteeship, compliance, and other actions taken by the IRO during the preceding year, including a summary of the number and types of charges reviewed by the IRO, the

disposition of those charges, and an analysis of those dispositions as compared with the dispositions of similar charges in previous years.

34. Prior to the effective date of this Revised Final Order, the IRO conducted an assessment of the IBT's internal disciplinary systems and audit functions and found that the IBT has "developed the institutional tools, processes, and procedures necessary to adequately detect, investigate, and resolve instances of major corruption" within the Union, and that the Union has "sufficient institutional capacity to assume responsibility of internal investigations and compliance functions currently performed by the IIO." The IRO also issued a written set of recommendations to enhance the IBT's internal disciplinary systems and audit functions. These recommendations included, but were not limited to: (i) establishing and maintaining a dedicated compliance reporting hotline for OCSI; (ii) implementing a process to conduct random audits of IBT affiliates; (iii) enhancing policies and procedures governing disciplinary investigations and the imposition of trusteeships; and (iv) enhancing the system for tracking and resolving audit findings. The IBT shall work cooperatively with the IRO to implement the recommendations made by the IRO.

35. During the IRO's three-year term, the IRO shall be authorized to review the OCSI's practices and investigations and the IBT's internal and affiliate audit functions. Based on its review and in consultation with the IBT, the IRO may issue additional recommendations as appropriate to ensure the continued effectiveness of the IBT's compliance, audit, and investigative functions. The IBT shall work cooperatively with the IRO to implement these additional recommendations. The IRO shall also issue annual evaluation reports to the GEB and the IBT's Audit Committee setting forth its assessment of whether OCSI and the IBT's audit functions have been effective at identifying, addressing, and eliminating the influence of

organized crime and all forms of major corruption within the Union, including but not limited labor racketeering, corrupt relationships with employers or third-parties, theft or embezzlement, and other criminal activity.

36. The OCSI and the IBT's audit departments shall cooperate fully with the IRO and shall provide the IRO with timely and unrestricted access to all records, case files, audit reports, and other materials reasonably requested by the IRO in connection with the exercise of its review responsibilities.

37. During the IRO's three-year term, the IRO shall exercise the following additional responsibilities:

a. Annual OCSI Reporting. Every year, the OCSI shall submit to the IRO a written report detailing: (i) the number and nature of complaints received during the reporting period; (ii) the status and disposition of all open investigations; (iii) the nature and outcome of all investigations completed during the reporting period; and (iv) any disciplinary actions taken or recommended.

b. Annual Audit Reporting. Every year, the IBT's internal and affiliate audit departments shall submit to the IRO a written report covering: (i) the affiliates audited during the reporting period; (ii) all material findings and recommendations; (iii) follow-up actions taken on prior audit findings; and (iv) the status of affiliates enrolled in the Underperforming Affiliates Program.

c. Review Authority. The IRO shall have the right to request and review any individual OCSI case file, audit report, or related documentation, and to issue written recommendations to the IBT regarding the handling of specific matters. The

IBT shall respond in writing to any such recommendation within thirty (30) days of receipt.

d. Access. The IBT shall afford the IRO reasonable and timely access to all OCSI personnel and audit staff, and all relevant records, documents, and materials.

e. Annual Reporting. On an annual basis, the IRO shall submit a letter to the Government stating whether the IBT has complied with the requirements imposed on the IBT that are set forth in this paragraph and in paragraphs 19 to 38 of this Revised Final Order.

f. Policies and Procedures. Any proposed amendments, modifications, or revisions to the policies and procedures governing the OCSI or the IBT's internal or affiliate audit functions shall be submitted to the IRO for review and approval no less than thirty days prior to proposed implementation. The IRO shall have the authority to disapprove any such changes that, in the IRO's judgment, would materially diminish the effectiveness of the IBT's compliance framework.

38. Upon the expiration of the IRO's three-year term, the IRO shall submit a letter to the Court stating that his or her term has ended. Should the IRO, in his or her sole discretion, believe there is good cause for extending the IRO's term, the IRO will notify the Court of this belief at least two months prior to the expiration of his or her term and the Court will schedule a status conference to hear the parties' positions as to whether the IRO's term should be extended.

39. At the end of the IRO's term, the IRO shall destroy all of the IIO's closed and inactive files that were transferred to the IRO's custody pursuant to paragraph 23 of this Revised Final Order, unless the IRO advises the Court in writing that there is good cause to preserve specific files and articulates a reasonable basis for preserving such files.

**INDEPENDENT COMPLIANCE PROFESSIONAL**

40. Upon the termination of the IRO's authority, the IRO shall be succeeded by an Independent Compliance Professional ("ICP"). The ICP shall ensure that the IBT's internal investigative, disciplinary, and audit functions operate effectively to detect, address, and eliminate the influence of organized crime within the Union and all forms of major corruption, including but not limited to labor racketeering, corrupt relationships with employers or third-parties, and theft or embezzlement. The specific duties and responsibilities of the ICP shall be agreed to by the IBT and the IRO and shall be set forth in a written filing with the Court. The ICP shall be appointed by the General President, in consultation with the General Executive Board, and shall serve as a permanent member of the IBT's Audit Committee.

41. The IBT shall establish minimum qualifications for service as the ICP, which qualifications shall be designed to ensure that the ICP is experienced, effective, and completely independent of the IBT, and free from any actual or apparent conflict of interest. No individual may serve as the ICP absent a reputation for honesty, integrity, impartiality, and independence. The ICP shall be an attorney with substantial prior experience with enforcing labor laws or with governmental investigations, or have had substantial prior experience as a federal or state judge or other relevant professional experience. Current and former members and employees and agents of the IBT and its constituent entities shall be ineligible for appointment as ICP.

42. The ICP shall be appointed to a three-year term and cannot be removed from office during his or her term absent good cause and by a vote of 75% of the General Executive Board.

43. The ICP shall be available to serve as a resource for the General President's designee responsible for the IBT's internal disciplinary system and for the General Secretary-Treasurer's designee responsible for audit.

44. The ICP shall meet with the General President's designee responsible for the IBT's internal disciplinary system and with the General Secretary-Treasurer's designee responsible for audit on a bi-annual basis. The ICP shall work collaboratively with the designees to understand the activities of their respective programs during the previous six months and any challenges that their programs have faced.

**ADEQUATE FUNDING AND INDEMNIFICATION**

45. The IBT shall pay all costs and expenses of, and provide suitable office space outside the premises of the IBT for, the Independent Election Supervisor, the IRO, and the IIO and their respective staffs. The IBT shall work cooperatively with the Independent Election Supervisor, the IRO, and the IIO to establish a budget for each office that is reasonable and adequate to ensure the effectiveness and independence of each officer. Any dispute regarding the adequacy of funding or other resources of the Independent Election Supervisor or the IIO shall be resolved by the IRO, or if the dispute cannot be resolved by the IRO, by this Court. Any dispute regarding the adequacy of funding or other resources of the IRO shall be resolved by this Court.

46. The IBT shall continue to maintain a policy of insurance in an appropriate amount to protect the Independent Election Supervisor, the IRO, the IIO, and any persons acting on their behalf from personal liability for any of their actions on behalf of the IBT, the Independent Election Supervisor, the IRO, or the IIO. If such insurance is not available, or if the IBT so elects, the IBT shall indemnify the Independent Election Supervisor, the IRO, the IIO, and any persons acting on their behalf from any liability (or costs incurred to defend against the imposition of liability) for conduct taken pursuant to this Revised Final Order. That indemnification shall not apply to conduct not taken pursuant to this Revised Final Order. In

addition, the Independent Election Supervisor, the IRO, the IIO, and any persons designated or hired by them to act on their behalf shall enjoy whatever exemptions from personal liability may exist under the law for court officers.

**INTERNAL AUDIT AND FINANCIAL CONTROLS**

47. The IBT's obligations under the Stipulation and Order entered December 28, 2001, concerning enhancements to the internal financial controls of the IBT are incorporated by reference into this Revised Final Order. The IBT shall maintain the enhancements to its internal financial controls implemented pursuant to the December 28, 2001 Stipulation and Order, and may modify such controls only with the approval of the independent accounting professional appointed pursuant to Article VIII, section 1, of the IBT Constitution.

**SUSPENSION OF INDICTED OFFICERS AND APPOINTEES**

48. In the event any officer, agent, appointee, representative, or employee of the IBT or any of its constituent entities is criminally charged in any federal, state, District of Columbia, or territorial court with any act of racketeering, as that term is defined in 18 U.S.C. § 1961, or any felony relating to the conduct of the affairs of any labor organization or employee benefit or pension plan, the IBT General President, with the approval of the General Executive Board, or the General Executive Board acting on its own initiative, upon being informed about such charge, may immediately place the accused individual on temporary leave of absence without pay and may preclude such individual from holding any paid or non-paid position with the IBT or any of its constituent entities. If the IBT does not place an individual charged with an offense described above on a temporary leave of absence without pay or preclude the individual from holding any paid or non-paid position with the IBT or any of its constituent entities, the IBT shall submit a report to IRO, who shall have the authority to order that such individual take a

temporary leave of absence without pay or preclude the individual from holding any paid or non-paid position with the IBT or any of its constituent entities.

**IMPLEMENTATION OF THIS REVISED FINAL ORDER**

49. The IBT agrees to take all actions to ensure its ability to lawfully comply with its obligations and commitments under this Revised Final Order. The IBT shall not adopt any procedure, resolution, constitutional amendment, code of conduct, or other internal rule that is inconsistent with, or has the purpose or effect of undermining, the terms or objectives of this Revised Final Order.

**CONTINUED VIABILITY OF CONSENT DECREE PRECEDENT**

50. All matters of construction and interpretation of the Consent Decree, Final Order, Election Rules, and obligations imposed upon members under the IBT Constitution shall continue to be governed by the decisional law established in this action by the Independent Administrator, the IRB, the Election Officers, the Election Administrator, the Election Appeals Masters, the IRO, this Court, and the United States Court of Appeals for the Second Circuit.

**LIMITATIONS**

51. Nothing in this Revised Final Order shall: (a) prevent the United States or any of its agencies or individual agents from investigating the IBT or any person having any relation to this matter; or (b) prevent the United States from instituting a civil or criminal action against any person or entity in the future and, in doing so, relying on any evidence or materials obtained in connection with this action.

52. Nothing in this Revised Final Order shall affect the validity or operation of any existing decrees or orders entered against the IBT or any of its constituent entities in any action outside the Southern District of New York, including, without limitation, any decrees or orders

entered in United States v. Local 282 of the IBT, CV-94-2919 (E.D.N.Y); United States v. Local 295 et al., CV-90¬970 (E.D.N.Y.); United States v. Private Sanitation Industry Ass'n et al. (IBT Local 813), CV89-1848 (E.D.N.Y.); United States v. Local 560, 82 Civ. 689 (D.N.J.); United States v. Bonanno Organized Crime Family et al., Civ. No. 87-2974 (E.D.N.Y); and United States v. Vincent Gigante et al., Civ. No. 88-4396 (D.N.J.).

**NOTICE**

53. The IBT shall provide notice to the membership of the entry of this Revised Final Order by publishing a copy of this Revised Final Order (including all exhibits) on the IBT's website.

54. Contemporaneous with any appointment by the IBT of a new Independent Election Supervisor, IRO, or ICP in accordance with this Revised Final Order, the IBT shall announce such appointment in the IBT Magazine and on the home page of the IBT website. The announcement of such appointments shall provide sufficient information about the appointee to demonstrate that the appointee meets the qualifications for experience and independence set forth in the IBT Constitution and this Revised Final Order.

**2015 FINAL ORDER**

55. Upon the effective date of this Revised Final Order, and except as provided in this Revised Final Order, this Revised Final Order shall supersede and replace the 2015 Final Order.

**EFFECTIVE DATE**

56. The effective date of this Revised Final order shall be the date on which it is entered by Court.

Dated September 3, 2026

JAY CLAYTON
United States Attorney for the
Southern District of New York

By: /s/ Benjamin H. Torrance
BENJAMIN H. TORRANCE
Assistant United States Attorney
86 Chambers Street
New York, NY 10007
Telephone: (212) 637-2703
benjamin.torrance@usdoj.gov

INTERNATIONAL BROTHERHOOD OF TEAMSTERS

By: /s/ David O'Brien Suetholz
DAVID O'BRIEN SUETHOLZ
General Counsel
International Brotherhood of Teamsters
25 Louisiana Avenue, N.W.
Washington, D.C. 20001
Telephone: (202) 624-6800
dsuetholz@teamster.org

SO ORDERED:

Loretta A. Preska

Hon. Loretta A. Preska
UNITED STATES DISTRICT JUDGE

# Exhibit A

**Persons Permanently Barred from the IBT by Action Initiated by IRB**

| | | |
|---|---|---|
| Aaron, Scott | Abbate, Joseph | Adamo, Frank |
| Adelstein, Bernard | Agathos, John | Agliata, Peter |
| Akalski, John | Alfieri, Victor | Aligo, Joseph |
| Alimena, Ralph J. | Allocca, Francis | Anthony, Gary |
| Antoun, Anthony | Baccaro, Frank | Bane, Michael |
| Barbato, Salvatore | Barbato, Salvatore | Baron, Perry |
| Baron, Thomas | Baroncelli, David | Barretta, Jack |
| Barretti, Jr., Philip | Barretti, Philip | Bavaro, Pasquale |
| Bellamare, Andrew | Bellochio, Scott | Bennett, Eugene |
| Bernhard, Nicolas | Bernstein, Joseph | Bilotti, John |
| Bizenza, Richard | Boano, Michael L. | Boggia, Glenn |
| Bourgal, Micahel | Brovarski, Theodore J. | Brovarski, Theodore M. |
| Brown, Timothy | Buckley, James | Burhoe, Joseph |
| Bush, Earl D. | Calagna, Anthony | Calagna, Sr., Anthony |
| Calcagno, Robert | Caldwell, Walter | Camadeco, Benjamin |
| Cammaranno, Jr., Joseph | Cammaranno, Sr. Joseph | Canino, Sam |
| Cantu, Arthur | Capone, Albert | Capone, Stephen |
| Caracciolo, Dominick | Carbone, Michael | Carbone, Ronald |
| Carey, Ron | Carucci, Michael | Cashman, George |
| Cassero, Charles | Castelle, John | Cataldo, Salvatore |
| Centaro, Charles | Cerbone, Thomas | Cherilla, William |
| Chester, Todd | Chester, Todd | Chiavola, George |
| Ciesla, Richard | Cimino, Joseph | Ciner, Eugene |
| Clancy, John | Coli, James L. | Compono, John |
| Congemi, John | Connelly, Leo | Cordato, Vincent |
| Corrallo, Gerald | Cozza, Theodore | Cozzo, James Vincent |
| Crapanzano, L. Robert | Crapanzano, Pasquale | Crapanzano, Patrick |
| Crawley, Chuck | Cumella, Jasper | Cuozzo, Anthony |
| Cutolo, William | Czernel, Chester | D’Aiuto, John |
| D’Ambrosio, Rocco | D’Amico, Ralph | D’Andraia, Ralph |
| D’Angelo, Robert | Deamicis, James | DeAngelis, Louis |
| Dellorusso, Patrick | Delsardo, Ralph | DeMatteo, Joseph |
| DeStefano Albert | DiFronzo, Peter M. | DiGangi, Michael |
| DiGirlamo, Nick A. | DiLeonardo, Michael | DiNardi, Anthony |
| DiNardi, John | Disario, Vincent | DiTomasso, Marie |
| Doe, Michael | Donahue, Dennis | Doris, Maria |
| Dougherty, Edward | Doyle, Scott | Dyson, Ronald |
| Esposito, Louis | Faicco, Alfred | Fandacone, Anthony |
| Fappiano, Frank | Fasulo, Philip | Fattizzi, Dina |

| | | |
|---|---|---|
| Fattizzi, Vincent | Fattizzi, Vincent | Fazio, John |
| Federico, Vincent | Feeney, Frank | Feeney, Robert J. |
| Feinstein, Barry | Feola, Vincent | Ferchak, William |
| Ferrara, John | Ferreri, Ralph | Festa, Modestina "Augie" |
| Fields, Lon | Fiumfreddo, Frank | Forino, Ronald H. |
| Friedman, Harold | Froncillo, Dominick | Furstman, Theodore N. |
| Fusco, Carmine | Fusco, Dominick | Galante, James |
| Gallina, Andrew | Garafola, Edward | Garbarino, Anthony |
| Garono, Lawrence | Geller, Mitchell | Generoso, Jr., Michael |
| Generoso, Vincent | Genoese, William | Georgopolous, John |
| Giannattasio, Maria | Gibney, George | Giovanniello, Nicholas |
| Girlando, Joseph | Glimco, Joseph | Gonzalez, Edwin |
| Grancio, Nicholas | Guarniero, Pasquale | Gugliaro, Vincent |
| Guglielmo, John F. | Guidice, Dominick | Hamilton, William |
| Hanoian, Paul | Heilbrun, Richard | Heim, Donald |
| Herron, Murlene | Hickey, Dennis C. | Hickey, Dennis E. |
| Hittner, Elyse | Hittner, Jeffrey | Hittner, Mark |
| Hittner, Seymour | Hoff, Walter | Hogan, Joseph |
| Hogan, William T. | Hohmann, John | Houmis, Mark |
| Ianniello, Michael | Igneri, Anthony | Immerglick, Roger |
| Incandella, Frank | Ingrassia, Joseph | Innaurato, Peter |
| Isner, Raymond | Jackson, James | Jones, Mark |
| Kapp, Bruce | Kikes, John | Kolakowski, Zbigniew |
| Kosey, Joseph | Lanser, Chris | Lanza, Charles |
| Lanza, Louis | Lark, Jr., Clarence | Lauro, Costabile |
| Leidl, Randolph | Levy, Richard | Ligurotis, Daniel C. |
| Llopiz, Mia | LoDolce, Joseph | Loguidice, Michael |
| Lombardo, Louis | Lombardozzi, Camillo | Lombardozzi, Daniel |
| Lombardozzi, George | Long, John F. | Lunati, Frank |
| Lunati, Louis | Maddaloni, Michael | Madonna, Aniello |
| Maguire, Lawrence | Mahoney, John S. | Maldonado, Fausto |
| Malena, Michael | Mall, Richard | Manero, Anthony |
| Manfredi, Antonio | Manfredi, Corrado | Manfredi, Nick |
| Mangine, David | Manzo, Frank | Marchini, Michael |
| Marsigliano, Frank | Martinelli, Henry | Martinelli, John |
| Martinelli, Robert | Martinelli, Vincent | Martinez, Edward |
| Mastando, John | Mastando, John | Mauro, Charles |
| McKay, Robert | McKim, Nellie | McNamara, Dennis |
| McNeil, James | Meekin, John | Menechino, Peter |
| Meyer, Charles | Mezzina, Onofrio | Milano, Dominick |
| Miller, Albert | Milo, Nicholas | Minichino, Marco |

| | | |
|---|---|---|
| Mirabello, Michael | Misuraca, Angelo | Moar, James |
| Mongelli, Paul | Morabito, Alice | Moran, John |
| Morris, David | Morris, Michael J. | Morrison, Jerry |
| Mosley, Cassandra | Mule, Joseph C. | Murray, Joseph |
| Musso, Girolemo “Sonny” | Napolitano, Morris Sr. | Nardi, Nicholas |
| Nave, Jerry | O’Brien, Charles | O’Donnell, Anthony |
| O’Grady, James | Ortense, Valentine | Paccione, Adrianne |
| Paccione, Angelo | Padellaro, Joseph | Paolino, Angela |
| Paolino, Angelo | Paolino, Thomas | Parise, Nicholas, Jr. |
| Parise, Nicholas, Sr. | Parker, Larry | Parrino, Anthony |
| Passo, Dane | Pecora, Joseph | Perry, John |
| Piccolo, Anthony | Picone, John | Picone, Samuel |
| Pierce, Bernice | Pirro, Joseph | Piscopo, Bernard |
| Plinio, Thomas | Plotnick, Larry | Polidori, Raymond |
| Ponce, Armando | Porta, Michael | Porter, Raymond |
| Prelli, Michael | Proctor, Gary | Proybehan, John |
| Purpura, Carl | Rabbit, Michael | Radek, Richard |
| Radice, Frank | Rascyk, Greg | Razza, Anthony |
| Rea, Armando | Reynolds, Andrew | Rheinhardt, Robert |
| Richardson, Gary | Riley, Robert | Rizzo, Anthony |
| Rizzo, Patricia | Roach, Christopher | Roberto, Joseph |
| Robilotto, Nicholas | Robles, Donny | Rodzwicz, Edward |
| Rosano, Thomas | Ross, Charles | Ross, Josef |
| Rumore, Anthony | Rumore, Louis | Russo, Michael |
| Ryan, Thomas | Ryan, Timothy | Sacca, Dominic |
| Sainato, Anthony | Salcedo, Sergio | Salerno, Cirino (Charles) |
| Salerno, Frank | Saltalamachea, Henry | Sansone, Robert |
| Santora, Gene | Sass, Gary | Sasso Robert |
| Scaffidi, Anthony | Scalza, Perry | Scalza, Richard |
| Scalza, Robert | Schweitzer, Henry | Sciarra, Michael |
| Scognamiglio, James | Scully, Christopher | Selvaggi, Warren |
| Senese, Dominic | Senese, Lucien | Senter, Anthony M. |
| Sirabella, Anthony | Sirico, Robert | Skeries, Robert |
| Slawson, Bradley A. | Slawson, Bradley D. | Slemko, Daniel |
| Sombrotto, Vincent | Sottile, Pasquale | Spada, John |
| Spalding, Stacey | Spencer, Robert | Sperando, John |
| Spikes, Jr., Willie | Spranzo, Carlo | Stauffer, Joseph |
| Stein, Larry | Stella, Ronald | Talerico, Joseph |
| Tamily, Henry | Taylor, John | Tennenbaum, Bernard |
| Teolis, Glenn | Tomanelli, Michael | Torre, Joseph |
| Tortorici, Philip | Trerotola, Joseph | Triano, Robert |

| | | |
|---|---|---|
| Tripodi, Stephen | Trivigno, John | Turzio, Anthony |
| Urso-Pernice, Michael | Valerio, David | Valerio, Gildo |
| Valle, Sonio | Vanderbergen, Dennis | Ventimiglia, Pasquale |
| Vera, Arcadio | Vigliotti, Joseph | Vigliotti, Vincent |
| Vitarelli, Frank Sr. | Vitarelli, Joseph | Vulpis, Daniel Jr. |
| Vulpis, Daniel, Sr. | Vulpis, Dominic | Vulpis, Dominick |
| Wallach, David | Weinberg, Brian | Weinberg, Sheldon |
| Werthmann, Thomas | Whitney, Sam | Wilkens, Jeffrey |
| Wilson, Robert | Winstead, Brady | Wojciechowski, Joseph |
| Wolf, Rita | Yanucci, Jospeh | Yera, Maria |
| Zancocchio, John | Zappi, Anthony | Zenga, Daniel |

**Persons Permanently Barred by Action of the IBT Independently of the IRB**

Cashman, George

**Persons Permanently Barred Subsequent to the 2015 Final Order**

Aloise, Rome A.
Castelle, Anthony F.
Cioffi, William J.
Coli Sr., John T.
Hintze, Michael
Leto, Agelo
Marra, Joseph
Murray, Steven
Norizsan, James

# Exhibit B

# RULES GOVERNING THE AUTHORITIES OF THE INDEPENDENT REVIEW OFFICER AND THE CONDUCT OF HEARINGS

## A. INTRODUCTION

These Rules Governing the Authorities of the Independent Review Officer and the Conduct of Hearings (hereinafter "Disciplinary Rules") outline the authorities of the Independent Review Officer and the procedure in conducting hearings on disciplinary matters concerning IBT members facing disciplinary charges and IBT entities subject to trusteeship. The authority for implementing the Disciplinary Rules is provided by the Revised Final Order in 88 Civ. 4486 ("Revised Final Order"). In addition, these Disciplinary Rules may be modified or construed by the Independent Review Officer to ensure a just result in every matter.

## B. AUTHORITIES OF THE INDEPENDENT REVIEW OFFICER

1. The Independent Review Officer's investigatory authority shall include, but not be limited to, the following:

   a. To receive, no less than one week prior to any meeting of the IBT General Executive Board ("GEB"), the agenda for the meeting, and to attend meetings or portions of meetings of the GEB that relate in any way to the rights, duties, or activities of the IBT's Office of Compliance Standards and Investigations ("OCSI") and the Independent Review Officer.

   b. To attend meetings of any affiliated body of the International Union.

   c. To consult with and receive information from the IBT, OCSI and the Independent Election Supervisor appointed pursuant to the Revised Final Order.

   d. Refer disciplinary matters to the OCSI for investigation in accordance with the Revised Final Order.

e. In exercising the powers and authorities bestowed in the Revised Final Order, direct the OCSI to make use of any of the investigatory powers to ensure compliance with the terms of the Revised Final Order.

f. Examine and review actions taken by the appropriate IBT entity to implement the Independent Review Officer's decisions or recommendations pursuant to the Revised Final Order. In so doing, the Independent Review Officer may direct the OCSI to make use of any of its investigatory powers to ensure that the appropriate IBT entity properly implements the Independent Review Officer's recommendations or decisions. Failure to timely take all action necessary to implement the Independent Review Officer's recommendations or decisions shall be deemed a failure to cooperate fully with the Independent Review Officer.

g. Any other authorities and powers set forth in the Revised Final Order.

2. The Independent Review Officer shall have the authority to inform the General President and the GEB, the IBT and/or any IBT affiliates, OCSI, and membership of the identities of persons or entities who are or have been the subject of disciplinary action by the Independent Review Officer, and/or who are or have been identified as members or associates of La Cosa Nostra or any other organized crime group, for purposes of informing the members, officers, employees, agents and representatives of the IBT and its affiliates that association with or employment of these persons or entities may be cause for investigative or disciplinary action.

**C. PURPOSE OF DE NOVO HEARING**

A fair and impartial hearing shall be conducted before the Independent Review Officer pursuant to Paragraph 29 of the Revised Final Order. Through December 31, 2026, the Independent Investigations Officer ("IIO") shall submit its position on the adequacy of the IBT's disciplinary decisions

and present evidence in support of the disciplinary charges at the de novo hearing. Thereafter, if necessary, the Independent Review Officer shall have the authority to appoint counsel to present evidence in support of the disciplinary charges at the de novo hearing. The purpose of the hearing shall be to determine whether the proposed findings, charges, or recommendations regarding discipline or trusteeship in disciplinary charge reports are supported by a preponderance of the reliable evidence.

**D. CONTENTS OF NOTICE**

1. The Independent Review Officer shall determine the date, time and place of the hearing, and shall serve a Hearing Notice of such on the person charged, or the IBT affiliate subject to trusteeship, the OCSI , and any other person or entity deemed to have an interest in the proceeding. The person charged or the IBT affiliate subject to trusteeship shall be given a reasonable time, in no event less than ten (10) days, to prepare for the hearing. The Independent Review Officer may, in his or her discretion, direct that hearings be conducted virtually.

2. In addition to including the date, time and place of the hearing, the Hearing Notice shall include a copy of the OCSI's charge report and a copy of these Hearing Rules.

**E. SERVICE OF NOTICE**

1. If the person charged, or the IBT affiliate subject to trusteeship, is represented by counsel, the Hearing Notice shall be served on such counsel by first-class mail, postage prepaid.

2. If the person charged, or the IBT affiliate subject to trusteeship, is not represented by counsel, then the Hearing Notice shall be served by registered or certified mail, return receipt requested, in accordance with the following procedure.

a. In the case of an individual, the registered or certified mailing, return receipt requested, shall be made to the individual's last known home address. If that mailing is refused, the Hearing Notice shall be served by first-class mail,

postage prepaid, to the individual's last known home address. The modes of mail service may be made simultaneously. If a last address is not known, the Hearing Notice shall be mailed by first-class mail, postage prepaid, to the principal office, as listed in the IBT's Roster, of the Local Union of which that individual is a member. If that individual is not currently a member of a Local Union, the Hearing Notice shall be mailed by first-class mail, postage prepaid, to the principal office, as listed in the IBT's Roster, of the last Local Union of which that individual was a member.

b. In the case of an IBT affiliate, the registered or certified mailing, return receipt requested, shall be made to that affiliate's principal office as listed in the IBT's Roster. If the registered or certified mailing is refused, the Hearing Notice shall be served by first-class mail, postage prepaid, to that affiliate's principal office as listed in the IBT's Roster. The modes of mail service may be made simultaneously.

3. Nothing herein shall preclude personal service of the Hearing Notice. In the case of an individual, personal service may be made by delivering a copy of the Hearing Notice to the individual, or by leaving a copy thereof at the individual's home with some person of suitable age and discretion then residing therein. In the case of an IBT, personal service may be made by delivering the Hearing Notice to any member of the entity's Executive Board.

**F. REPRESENTATION**

The person charged or the IBT affiliate subject to trusteeship shall have the right to be represented at the hearing by counsel or by an IBT member in good standing.

**G. HEARING ATTENDANCE**

The failure of a charged party or an IBT affiliate subject to trusteeship to attend a hearing shall constitute a waiver of the right to attend and the Independent Review Officer may conduct the hearing in the absence of the charged party or IBT entity. Notwithstanding a failure of a charged party or IBT affiliate to attend a hearing, the Independent Review Officer may permit the charged party or IBT entity to submit a written memorandum either pre or post-hearing.

**H. OPEN HEARING**

Subject to space limitations and the interest of conducting an orderly hearing, hearings shall be open to IBT members in good standing.

**I. HEARING PROCEDURE**

The hearings shall be conducted pursuant to these Hearing Rules and rules and procedures generally applicable to labor arbitration hearing.

**J. TRANSCRIPT OF PROCEEDINGS**

A court stenographer shall be present at the hearing and a copy of the transcript shall be provided to the Independent Review Officer and the OCSI. The IBT shall bear the expense of the stenographer.

**K. OPENING/CLOSING STATEMENTS**

Opening and closing statements will generally not be permitted as a matter of course. However, the Independent Review Officer may permit the parties to make brief opening and closing remarks, if he or she deems such to be helpful.

**L. ORDER OF PRESENTATION**

Through December 31, 2026, the IIO shall first present evidence in support of the disciplinary charges at the de novo hearing and shall be permitted to conduct direct and cross

examination of witnesses, if the IIO deems necessary. From and after January 1, 2027, counsel appointed to present evidence in support of the disciplinary charges, or OCSI personnel (or OCSI designee), shall first present evidence in support of the disciplinary charges and shall be permitted to conduct direct and cross examination of witnesses, if they deem necessary. After the initial evidence and witnesses are presented, the charged person or the IBT affiliate subject to trusteeship may present his, her or its evidence and conduct direct examination of witnesses. Cross-examination and re-direct examination of such witnesses shall be permitted. Before testifying, every witness shall be required to declare that he or she will testify truthfully, by oath or affirmation administered in a form calculated to awaken the witness' conscience and impress the witness' mind with the duty to do so.

### M. EVIDENTIARY OBJECTIONS AND ADMISSIBILITY OF EVIDENCE

Evidentiary objections, regardless of grounds, may be made during the hearing and may be addressed by the Independent Review Officer at that time. However, such objections are not waived if they are not made during the hearing, and all objections can be made in the post-hearing submissions. In any event, all evidence and testimony offered at the hearing may be accepted, by the Independent Review Officer, to be weighed post-hearing in light of the hearing testimony and post-hearing submissions.

### N. POST-HEARING SUBMISSIONS

1. Content of Submissions

   a. The IRO (through December 31, 2026), appointed counsel or OCSI shall submit a post-hearing memorandum addressing the merits of the charges, evidentiary issues, and other matters. The charged person or the IBT affiliate subject to trusteeship shall submit a response memorandum also addressing the merits,

evidentiary issues, and other matters. Thereafter, the IRO (through December 31, 2026), the appointed counsel or OCSI may submit a reply to the issues and arguments raised in the response filed by the charged person or the IBT affiliate subject to trusteeship.

b. The Independent Review Officer may request further submissions from the IRO (through December 31, 2026), appointed counsel, the charged persons or IBT affiliates subject to charges, the IBT, or OCSI on any issue he or she considers appropriate.

2. Schedule of Submissions

The Independent Review Officer shall set a schedule for the submission of post-hearing memoranda.

**O. INDEPENDENT REVIEW OFFICER'S DECISION**

1. After receipt of the post-hearing submissions, the Independent Review Officer shall issue a written decision, with copies to be sent to the charged person or the IBT affiliate subject to trusteeship, the IBT General President, each member of the GEB, and all affected parties, including the appropriate IBT entity designated by the Independent Review Officer with enforcement responsibility.

2. If the proposed finding(s), charge(s), or recommendation(s) contained in the IBT's charge report are sustained, the Independent Review Officer shall have the authority to impose disciplinary measures or conditions of trusteeship authorized by the IBT Constitution, the Revised Final Order and applicable law.

3. The appropriate IBT entity designated by the Independent Review Officer with enforcement responsibility, the IBT General President, and the GEB shall immediately take all

action necessary to implement the decision of the Independent Review Officer, consistent with the IBT Constitution and applicable federal law.

4. Decisions of the Independent Review Officer shall be final and binding.